**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| VISIONBANK, | Civil No. 09-1363 (JRT/AJB) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MINNWEST BANK METRO, | |
| Defendant. | |

Brad A. Sinclair, **SERKLAND LAW FIRM**, P.O. Box 6017, Fargo, ND 58108; Bruce H. Carlson, **MCNAIR LARSON & CARLSON**, P.O. Box 2189, Fargo, ND 58102; and Cynthia L. Hegarty, **BEST & FLANAGAN LLP**, 225 South Sixth Street Suite 4000, Minneapolis, MN 55402, for plaintiff.

Jennifer R. Coates, Kathryn J. Bergstrom, Gregory R. Merz, and Joy Reopelle Anderson, **GRAY PLANT MOOTY MOOTY & BENNETT, PA**, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402, for defendant.

Defendant Minnwest Bank Metro ("Minnwest") extended a loan to T&M Properties, LLC ("T&M") for the purchase of certain real estate. Plaintiff VISIONBank subsequently purchased a participation interest in the loan, buying the majority of the outstanding debt owed to Minnwest. The Loan Participation Agreement included a warranty by Minnwest that the original loan documents, including guaranties securing the loan, were properly executed. T&M defaulted on the loan, and VISIONBank came to believe that the guaranties were improperly executed and thus unenforceable.

VISIONBank filed suit against Minnwest, arguing breach of warranty and seeking rescission of the Loan Participation Agreement.

Both parties have filed for summary judgment. For the reasons stated below, the Court will deny summary judgment to VISIONBank, and grant in part and deny in part Minnwest's motion for summary judgment.

## BACKGROUND

Beginning around 2005, Minnwest, a Minnesota-based bank, made a series of loans to various entities associated with Thomas Petters. (First Aff. of Kathryn Bergstrom, May 25, 2010, Ex. A. at 12-13, Docket No. 28.) In February 2006, Minnwest extended a loan to T&M, a company equally owned by Petters and Michael O'Shaughnessy. (*Id.*, Ex. E.) T&M was created to purchase nine units in the Cloud 9 Sky Flats condominium development in Minnetonka, MN. (Id.) The company intended to lease the condominiums to another Petters company. (Id.)

The closing documents were signed not by Petters and O'Shaughnessy but by James Wehmhoff, Petters' Chief Financial Officer, acting pursuant to two substantively identical Powers of Attorney ("POA's"). (First Bergstrom Aff., Ex. A. at 18, 25-26, 40-41, Docket No. 28.) The loan was secured by nine individual mortgages on each condominium unit purchased by T&M and the separate guaranties of Petters and O'Shaughnessy. (Aff. of Miranda Muscha, May 19, 2010, Exs. H & I, Docket No. 23.) Identical in every respect except for Petters' and O'Shaughnessy's identifying information, the guaranties list Minnwest as the lender, T&M as the borrower and,

respectively, Petters and O'Shaughnessy as guarantors. (*Id.*) The addresses listed under each guarantor's name are different than the address listed under T&M. (*Id.*) The signature line on O'Shaughnessy's guaranty identifies Wehmhoff as "attorney-in-fact for Michael L. O'Shaughnessy, Treasurer of T&M Properties (MN), LLC[.]" (*Id.*, Ex. I.)

Approximately two years after it made the loan to T&M, Minnwest requested that VISIONBank participate in its loan to T&M. (*Id.*, ¶¶ 7, 8.) On or about February 2008, Minnwest provided VISIONBank with information relevant to the T&M loan, including its commercial real estate risk rating worksheet, a net operating income and cash flow analysis of the mortgaged units, Minnwest's internal credit review, and a financial analysis of Petters and O'Shaughnessy ("customary financial information"). (First Bergstrom Aff., ¶ 5, Muscha Aff., Ex. I, Docket No. 28.) Minnwest did not, however, share with VISIONBank the guaranties or any other original loan documents such as the promissory note. (Muscha Aff. ¶ 9, Docket No. 23.) In other participation transactions between the parties in which Minnwest was the originating lender, both before and after the transaction at issue in this case, Minnwest likewise provided only the customary financial information and not the original loan documents prior to VISIONBank's agreement to participate. (*Id.* ¶¶ 42, 43.) According to Minnwest, it is industry custom that original loan documents are provided to a participating bank within a few weeks of the execution of a participation agreement. (*Id* ¶ 6.)

At the time VISIONBank was considering participating in the T&M loan, the loan had been performing as expected for two years. (First Bergstrom Aff., Ex. I, Docket No. 28.) VISIONBank agreed to acquire an eighty-three percent interest in T&M's

outstanding obligation on the loan pursuant to a Loan Participation Agreement with Minnwest dated March 3, 2008.  (Muscha Aff. at ¶¶13-14, Docket No. 23; *Id.*, Ex. G.)

The Loan Participation Agreement states:

The Originating Bank makes no representation or warranties, whether expressed or implied, to the Participating Bank, as to the validity and enforceability of the Loan documents, other than (i) **the Loan documents were validly executed by** the Borrower, as well as, to the degree applicable, by the co-makers, **guarantor** and/or endorses under the Loan.

(First Bergstrom Aff., Ex. M ("Execution Warranty"), at ¶ 5(c), Docket No. 28 (emphasis added).) It also included a warranty by VISIONBank that its decision to purchase a participation interest in the loan was based "**solely upon [its] own independent evaluation of the Loan, the Borrower's creditworthiness and the existence, value and lien status of collateral securing the Loan**."  (*Id.* ¶ 6 (emphasis added).)  On or about June 18, 2008, Minnwest provided VISIONBank copies of Petters' and O'Shaughnessy's guaranties, at which point Minnwest discovered that they had been signed by Wehmhoff, acting through the POA's. (Muscha Aff. at ¶¶ 22, 26, Docket No. 23.)  In the fall of 2008, Petters came under investigation for conducting an extensive Ponzi scheme.  *See generally United States v. Thomas Petters*, No. 0:08-cv-05348 (D. Minn.).   He has subsequently been convicted and his business entities placed under court appointed receivership.  (*Id.*)

In a letter to John Applequist of Minnwest on October 22, 2008, O'Shaughnessy stated through counsel that he was "shock[ed]" to learn Minnwest expected him to personally guaranty the T&M loan, that he had not given Wehmhoff permission to sign a personal guaranty on his behalf, and that he viewed the guaranty as unenforceable.

(Muscha Aff., Ex. M, Docket No. 23.)  VISIONBank received a copy of this letter and the POA's on October 23, 2008.  (*Id.* ¶ 28.)

The T&M loan subsequently went into default as Petters' corporate empire collapsed.  The lease that had generated the income to service the loan was rejected in the bankruptcy cases relating to Petters' businesses.  (First Bergstrom Aff., at ¶ 4, Docket No. 28.)  Petters' guaranty is therefore essentially worthless whether or not it was validly executed.  O'Shaughnessy, however, retains liquidity.  Minnwest provided personal financial information to VISIONBank in February 2008 indicating that he had a net worth over three million dollars.  (Muscha Aff., Ex. R, Docket No. 23.)  O'Shaughnessy testified that as of December 2009, he had approximately $750,000 in a Merrill Lynch account.  (Aff. of Brad Sinclair, May 9, 2010, Ex. A at 130-31, Docket No. 22.)

Minnwest, still the lead bank and administrator on the T&M loan, has taken steps to resolve the loan.  It signed a Forbearance Agreement with O'Shaughnessy in March 2009, the goal of which was to re-lease the condominiums to service the loan and stabilize the value of the units.  (First Bergstrom Aff., Ex. CC, Docket No. 28; *see also* Ex. A at 153.)  Minnwest and VISIONBank received payments on the revised terms of the loan from May through November 2009.  (*Id.*, Ex. Q.)  When T&M defaulted on the Forbearance Agreement, Minnwest filed suit against O'Shaughnessy and initiated proceedings for the appointment of a receiver on the property.  Minnwest also sued O'Shaughnessy to enforce his personal guaranty of the T&M loan.[1]  The state court denied O'Shaughnessy's motion for summary judgment.  *See Minnwest Bank Metro v.*

---

[1] VISIONBank was not a party to that suit.

*O'Shaughnessy*, No. 27-CV-10-2832 (Henn. Cty. Dist. Ct. Oct. 15, 2010) ("State Court Order").  It concluded that while Wehmhoff did not have authority under the POA to bind O'Shaughnessy to a personal guaranty, a question of fact existed as to whether O'Shaughnessy ratified the guaranty, rendering it enforceable.  *Id.*  The court has subsequently granted O'Shaughnessy's motion to dismiss for failure to add an indispensible party, but dismissal was without prejudice. (Docket No. 46.)

In or around January 2010, one of the condominium units sold and both banks received proportionate shares of the net sale proceeds. (First Bergstrom Aff., Ex. B at 157, Docket No. 28.) VISIONBank received $152, 364.12 from that sale. (*Id.*, Ex. Q.) In addition to continuing to receive benefits from the T&M loan, VISIONBank has also participated in the work out of the loan.  For example, it initially suggested that Minnwest "pursue" O'Shaughnessy's guarantee.  (*Id.*, Ex. B at 151-52.)  It objected to the Forbearance Agreement, preferring stricter terms, but approved the January 2010 sale of the condominium unit. (*Id*; *see also id.* at 157; Exs. W, X, Y.)  The outstanding balance on the loan as of June 2010 is $2,028,946.60 including interest. (Muscha Aff. at ¶ 46, Docket No. 23; *see also id.*, Ex. S.)

In its complaint, VISIONBank seeks rescission of the Loan Participation Agreement as well as damages for breach of warranty and breach of contract.  It argues that Minnwest breached the Execution Warranty by failing to ensure that Petters' and O'Shaughnessy's personal guaranties were validly executed.  VISIONBank has moved for summary judgment, asking the Court to conclude that Minnwest breached the warranties and representations contained in the Loan Participation Agreement as a matter

of law and to order the contract rescinded. Minnwest has also moved for summary judgment, arguing that VISIONBank's complaint be dismissed in its entirety.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. VISIONBank's Summary Judgment Motion

VISIONBank argues that it is entitled to summary judgment on its breach of contract and breach of warranty claims based on Minnwest's failure to ensure that the guaranties securing the T&M loan were validly executed. In a transaction governed by the Uniform Commercial Code ("UCC"), the elements of a breach of warranty claim[2] in

---

[2] VISIONBank's breach of contract claim essentially alleges that Minnwest breached the Execution Warranty, and it has made no arguments unique to its breach of contract claim. Accordingly, the Court will consider the breach of contract and breach of warranty claims

Minnesota are the existence of a warranty, breach of the warranty, and a causal link between the breach and the alleged harm. *Duxbury v. Spex Feeds, Inc.*, 681 N.W. 2d 380, 393 (Minn. Ct. App. 2004). However, since the UCC does not govern this transaction, VISIONBank must also establish its reliance on the Execution Warranty. *See Hendricks v. Callahan*, 972 F.2d 190, 194 (8th Cir. 1992) (concluding that the Minnesota Supreme Court would likely require a plaintiff to prove reliance in a breach of warranty claim outside the context of contracts for sales of goods governed by the UCC); *see also Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 826 (D. Minn. 2010).[3]

In support of its argument that it has established reliance as a matter of law, VISIONBank has submitted the affidavit of Miranda Muscha, its Vice President of Credit Administration who facilitated the bank's participation in the loan. Muscha claims that VISIONBank would not have entered into the Loan Participation Agreement "had it not been assured that the personal guaranties of Petters and O'Shaughnessy had been validly executed." (Muscha Aff. at ¶ 44, Docket No. 23.)

Other record evidence, however, undermines that contention. In her deposition, Muscha testified that **she did not know whether VISIONBank would have approved the loan without the Execution Warranty** although the bank's loan committee would

---

together. *See Jesse v. HSFL Acquisition Co., LLC*, No. 08-358, 2009 WL 1086474, at *3 n.1 (D. Minn. Apr. 22, 2009).

[3] Citing *Alley Construction Co., Inc. v. State*, 219 N.W.2d 922, 926 n.1 (Minn. 1974), Minnwest argues that VISIONBank must also establish that the warranty concerned a material fact, that its reliance on the warranty was reasonable, and that the warranty was untrue. Since the Court concludes that VISIONBank has not established reliance as a matter of law, it need not at this time consider whether these additional elements are necessary to establish a common law breach of warranty claim.

have "had to have had a discussion." (First Bergstrom Aff., Ex. B at 105, Docket No. 28.) She did not recall whether the loan committee ever discussed the Execution Warranty during February of 2008 as VISIONBank considered purchasing a participation interest in the T&M loan. (*Id.*) Muscha stated that the Execution Warranty was "one thing [she] checked for" in reviewing participation agreements but she could not state whether, in her years of examining participation agreements, she had ever before seen an Execution Warranty like the one at issue. (*Id.* at 26-27.) VISIONBank's own expert opined that he has never before seen such a warranty in a participation agreement. (*Id.* at 26.) In addition, VISIONBank agreed to participate in the loan before its loan committee had even seen the Loan Participation Agreement.[4] (*Id.* at 104-105; *see also id.*, Ex. C at 59, Docket No. 28.)

The Loan Participation Agreement itself includes a warranty by VISIONBank that its decision to participate in the loan was based "**solely upon [its] own independent evaluation** . . . ." (Execution Warranty at ¶ 6 (emphasis added)); *cf. Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 369 (Minn. 2009) (rejecting a fraud claim in part because "[w]hen a party conducts an independent factual investigation before it enters into a commercial transaction, that party cannot later claim that it reasonably relied on the alleged misrepresentation").

---

[4] The committee did have copies of other Loan Participation Agreements with Minnwest. (First Bergstrom Aff., Ex. B at 104, Docket No. 28.) At least one committee member, however, testified that he did not know whether those previous agreements contained similar Execution Warranties but that he had never seen a warranty like the Execution Warranty in his experience. (*Id.*, Ex. C at 16 & 59, Docket No. 28.)

In short, there are disputed questions of material fact regarding whether VISIONBank relied on the Execution Warranty in agreeing to the Loan Participation Agreement sufficient to preclude summary judgment to VISIONBank. The Court therefore denies VISIONBank's motion for summary judgment.

### III. Minnwest's Summary Judgment Motion

Minnwest has filed for summary judgment on the grounds that VISIONBank cannot establish a right to rescission and that the complaint should be dismissed in its entirety because the alleged breach of the Execution Warranty was immaterial.

Minnwest first argues that even if it breached the Execution Warranty, VISIONBank is not entitled to rescission of the Loan Participation Agreement. Rescission is appropriate only if "the injury caused by the breach . . . is irreparable, or . . . damages would be inadequate or difficult or impossible to determine . . . ." *Johnny's, Inc. v. Njaka*, 450 N.W.2d 166, 168 (Minn. Ct. App. 1990). Rescission is "only available when damages at law are inadequate." *In re Digital Resource, LLC*, 246 B.R. 357, 369 (8th Cir. BAP 2000); *see also Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1057 (D. Minn. 2001).

Assuming that VISIONBank can prove reliance and all other elements of its claims, the Court does not find its injury irreparable. VISIONBank's damages would be greatly diminished if not eliminated if Minnwest successfully enforces O'Shaughnessy's guaranty. Moreover, Minnwest has obtained a court order enabling it to have a receiver appointed to T&M's estate and to sell the condominium units. (Second Aff. of Kathryn

Bergstrom, June 11, 2010, Ex. A, Docket No. 33.)  These actions may enable VISIONBank to reclaim much if not all of its participation.  Whatever harm VISIONBank suffered cannot currently be characterized as irreparable.  In addition, VISIONBank's damages should not be difficult to calculate.  Once the condominium units are sold and the enforceability and worth of O'Shaughnessy's guaranty has been determined, VISIONBank may quantify its damages by subtracting the amount ultimately recovered from the loan from its initial participation, plus interest.

VISIONBank argues that damages would inadequately compensate it for the harm it has suffered.  It alleges that beyond a $700,000 "allowance for potential loss" of its investment in the T&M loan, VISIONBank has also suffered irreparable "injury to its good will and loss of customers by still being involved in this litigation." (VISIONBank's Mem. of Law in Opp'n at 32, Docket No. 35.)  The evidence VISIONBank has submitted in support of this contention, however, is not compelling.  It cites the testimony of its representative William Kuzas that the allowance VISIONBank has made for a potential loss from the T&M loan might affect the bank's rating, causing "concern[ to] anybody who has access" to the rating information.  (First Bergstrom Aff., Ex. C at 64, Docket No. 28.)  Kuzas also testified that he has discussed this lawsuit with VISIONBank customers and clients, some of whom expressed "overall concern" about the pending litigation.  (*Id.* at 65-66.)  However, Kuzas was not aware of VISIONBank losing any business because of the lawsuit.  (*Id.*)  This deposition testimony about vague customer concerns, without specific examples or other evidence, is insufficient to establish a material factual dispute about the adequacy of a damages remedy.  *See Bob*

*Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993) ("Mere speculation, without some concrete evidence, is not enough to avoid summary judgment.")

VISIONBank analogizes this case to *Johnny's, Inc.*, in which the Minnesota Court of Appeals concluded that the defendant's repeated violations of cease and desist orders prohibiting him from misusing the plaintiff's trademark warranted the rescission of a stipulation to dismiss the plaintiff's earlier trademark infringement case. 450 N.W. 2d at 167-68. The trial court had determined that it was impossible to measure the damages from plaintiff's "loss of customers and good will resulting from the confusion" created by the defendant's appropriation of the plaintiff's trademark ("Pilgrim Cleaners") over a period of many years. *Id.* at 168.

Customer confusion was the essence of the harm experience by the plaintiff in *Johnny's, Inc.*, however, while in this case customer concerns are only tangential to VISIONBank's primary injury, the loss of the amount of its participation in the T&M loan. In addition, the statutory remedy for the misuse of a trademark and deceptive trade practices is injunctive relief, not damages. *Id.* Rescission was "the only available remedy" in *Johnny's, Inc.* because the defendant's history of violating cease and desist orders made it likely that another order would be unavailing. *Id.* VISIONBank, by contrast, should be able to quantify its loss from Minnwest's alleged breach after the T&M loan is worked out.

Minnwest further argues that VISIONBank is not entitled to rescission because it ratified the Loan Participation Agreement after it knew about Minnwest's alleged breach.

"Any act of ratification of [a] contract, after knowledge of the facts authorizing a rescission, amounts to an affirmance and terminates the right to rescind." *MCC Invs. v. Crystal Props.*, 415 N.W.2d 908, 912 (Minn. Ct. App. 1987) (citing *Beck v. Nw. Fed. Savings & Loan Ass'n*, 288 N.W. 217, 220 (Minn. 1939)). The right to rescind "may be waived by continuing to treat the contract as a subsisting obligation. . . . [A] party cannot rescind and at the same time retain a benefit under the contract." *Cut Price Super Markets v. Kingpin Foods, Inc.*, 98 N.W.2d 257, 267 (Minn. 1959) (quotation omitted).

It is undisputed that by October 23, 2008, VISIONBank had a copy of the guaranties, the POA's, and the letter from O'Shaughnessy's attorney expressing O'Shaughnessy's "shock" that Minnwest believed he had personally guaranteed the loan. (Muscha Aff. at ¶ 28, Docket No. 23; *id.*, Ex. M.) Accordingly, by October 23, 2008, VISIONBank was on notice of its potential rescission right.

Minnwest has proffered uncontroverted evidence that, despite this knowledge and information, VISIONBank has nonetheless continued to treat the Loan Participation Agreement as an ongoing obligation and received benefits pursuant to it. VISIONBank suggested that Minnwest attempt to enforce O'Shaughnessy's guarantee and objected to the Forbearance Agreement with O'Shaughnessy. (First Bergstrom Aff., Ex. B at 151-52, 157, Docket No. 23.) It received payments on the loan from May through November 2009 following the execution of the Forbearance Agreement and, having approved the sale of a condominium unit in January 2010, received $152,364.12 in proceeds. (First Bergstrom Aff., Ex. Q, Docket No. 28.) Evincing an understanding that its actions might constitute ratification, VISIONBank requested a "stand-still" agreement that would

enable it to take action on the loan without impairing its legal claims.  (First Bergstrom Aff., Ex. U, Docket No. 28.)  Minnwest did not assent to such an agreement.  (*Id.*, Ex. DD.)  While refusing, on the advice of counsel, to pay its share of expenses related to the sale of the condominium unit in January 2010, VISIONBank nonetheless received the proceeds of that sale.  (First Bergstrom Aff., Exs. Q & DD, Docket No. 28).

"When a material breach of contract occurs, the nonbreaching party may elect to either affirm or rescind the contract."  *Busch v. Model Corp.*, 708 N.W.2d 546, 551 (Minn. Ct. App. 2006).  If the injured party chooses to affirm the contract, the appropriate remedy is damages.  *Id.*  Although VISIONBank filed suit seeking rescission, its actions with regard to the T&M loan since October 2008 are consistent with ratification.[5]  Assuming it can prove its claims of breach, damages, not rescission, are the appropriate remedy.

While Minnwest is entitled to summary judgment on VISIONBank's rescission claim, the Court will not dismiss VISIONBank's complaint in its entirety as Minnwest

---

[5] VISIONBank cites *Ponzo v. Affordable Homes of Rochester, LLC*, No. A04-2234, 2005 WL 1804644 (Minn. Ct. App. Aug. 2, 2005) for the proposition that a "mere effort to avoid loss" under a contract does not constitute ratification.  *Id.* at *5 (quoting *Bergstrom v. Pickett*, 181 N.W. 343, 345 (1921)).  *Ponzo*, however, reaffirms the principles of ratification discussed above that undermine VISIONBank's rescission argument.  *See, e.g.*, *id.* ("Ratification occurs when a party accepts and retains the benefits of the contract.  For example, continuing to make payments under [a] contract after discovery of . . . fraud . . . constitutes ratification and will result in a waiver of one's right to rescind.").  *Ponzo* concerned a couple who ordered a 2000 model manufactured home but received a 1999 model.  *Id.* at *1.  When the couple realized they had been defrauded, they promptly notified the seller of their intent to rescind and filed suit less than three months later.  *Id.* at *6.  By contrast, VISIONBank initially suggested that Minnwest "pursue" the O'Shaughnessy's guarantee.  (First Bergstrom Aff. Ex. B. at 151-52, Docket No. 28.)  VISIONBank's acceptance of benefits from the loan support Minnwest's claim of ratification.

requests. VISIONBank requests both a decree of rescission and damages for breach of warranty and breach of contract.

Minnwest argues that a claim for breach of warranty requires the plaintiff to establish that the representation or warranty concerns a material fact. *See Alley*, 219 N.W.2d at 926 n.1. Minnwest alleges that because the Execution Warranty was not material to VISIONBank's decision to sign the Loan Participation Agreement, a breach of that warranty cannot be considered a material breach of the Loan Participation Agreement. A material breach is one that "goes to the root or essence of the contract." *Eagle Shores Hospitality, Inc. v. Karkos*, No. A04-2352, 2005 WL 2207678, at *2 (Minn. Ct. App. Sept. 13, 2005) (quoting Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 44:55 (4th ed. 2000)); *see id.* ("Minnesota appellate courts have concluded that a breach is material when one of the primary purposes of the contract was violated." (quotation omitted)).

VISIONBank does not assert that one of the primary purposes of the Loan Participation Agreement was for Minnwest to warrant that the original loan documents were properly executed. It does, however, argue that one of the reasons for entering into the Loan Participation Agreement was the financial strength of the guarantors. (*See, e.g.*, First Bergstrom Aff., Ex. B. at 87, Docket No. 28.) VISIONBank's ability to enforce O'Shaughnessy's guaranty goes to the root of the contract. Minnwest's breach of the Execution Warranty, if proven, may have stripped VISIONBank of that remedy. Arguably, the question of materiality does not hinge on VISIONBank's willingness to participate without the Execution Warranty but on its willingness to participate without

confidence in the guaranties. Moreover, the Court cannot conclude as a matter of law that the Execution Warranty was **not** material to VISIONBank's decision to participate in the loan, given Muscha's sworn statement to the contrary. (Muscha Aff. at ¶ 44, Docket No. 23 (stating that VISIONBank would not have entered into the Loan Participation Agreement "had it not been assured that the personal guaranties of Petters and O'Shaughnessy had been validly executed.").) The Court therefore denies Minnwest's motion for summary judgment in so far as it seeks dismissal of VISIONBank's claim for damages.

This case will be placed on the Court's next available trial calendar

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. VISIONBank's Motion for Summary Judgment [Docket No. 19] is **DENIED**.

2. Minnwest's Motion for Summary Judgment [Docket No. 25] is **GRANTED in part** and **DENIED in part** as follows:

   a. The motion is **GRANTED** as to VISIONBank's claim for rescission and that claim (Count 1) is **dismissed with prejudice**.

   b. The motion is **DENIED** in all other respects.

DATED: March 31, 2011                    ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                               United States District Judge